Good morning. The first case we'll hear is Wu v. Capital One, No. 14-3719. May it please the court. My name is Matthew Cappazzoli from the law firm of Robinson-Brogg, and I'm here on behalf of plaintiffs' appellants Lewis and Rachel Wu. If I may, I would like to reserve three minutes of time for rebuttal. That will be granted. With one notable exception, this appeal results from what we respectfully suggest are the district court's failure to appreciate certain well-established principles of law, not the least of which involves the Wu's claim for a breach of the implied covenant of good faith. The district court in this case found that because the loan documents at issue gave the bank discretion with respect to certain funding requirements, that they were entitled to exercise that discretion without application of the implied covenant. Even if we agree with you that the district court got that wrong, the folks on the other side there are pretty emphatic in asserting that there was nothing less than good faith in how they exercised their discretion, you put nothing in the record and you showed nothing to us to indicate that they didn't exercise their discretion in good faith, and so the district court's decision on summary judgment is still sound. What is in error, if anything, in that assertion they made? May I just add to Judge Jordan, you didn't even plead in your complaint the implied covenant. Well, first of all, I think the complaint does mention bad faith conduct with respect to breach of the contract, but I understand it's not as clear as it should be. With respect to your question, first of all, I'd say there is evidence, and there was evidence presented to the district court. But importantly... Well, you've got to be specific, right? They say you didn't direct the district court to anything and you still haven't directed us to anything. So what is it that you rely on to show evidence that there was bad faith on the part of the bank? Would you like me to go through some of the specific items? Also, to add on to Judge Jordan's question, using the complaint is not at this level going to meet your burden. No, I absolutely understand that. And importantly, I think, to recognize is that in cases that deal with the implied covenant of good faith, there are a lot of questions of credibility and other issues like that. What the district court did here was it did not conduct a factual analysis at all. It didn't address any questions of fact. Instead, it just found as a matter of law that a rule didn't apply. You're asserting that there is a fact. That's the point. We want to know, beyond your speculation that the bank might have been in poor financial condition, and that's pure speculation, what facts do you have? I actually made a list, so I'll go through it. First of all, at the time that the loan closed, the bank initially estimated that the as-completed value of the property would be $7.9 million. But then they demanded a $10 million appraisal without explanation as to how that figure was calculated. Well, they're pretty emphatic in their briefing, and this is the subject of some of your discussion too, they're specifically authorized by paragraph 7G to ask for an appraisal that is at or exceeds that value, that $7.8 million value, and that the loan-to-value ratio was inadequate based on the appraisal at 7.8. Now, if that's true, if we agree with them that paragraph 7G provides that, how is it bad faith for them to insist on that? You're assuming that you agree that meet or exceed means that they can insist on an appraisal as high as they want to go? Because I tend to disagree with that assertion. Well, no, no. That's why I was trying to insert my question perhaps inartfully, but I'm trying to insert in there the notion that the argument that they seem to be making, which is that under paragraph 8B, you can't read 7G without reading 8B. You've got to read them together, and 8B says loan-to-value ratio has got to be 60% at least. So you put those together, and that's how they assert that they get to go in that $10 million range, somewhere in that range. At least I understand that to be their argument. That's their pitch. Why is that wrong? I think you're correct. First of all, 8B, when it discusses loan-to-value ratio and the circumstances in which loan-to-value ratio might be out of whack, it provides a specific mechanism to address that problem, and it doesn't involve an increased appraisal amount. It says that the WUs have an opportunity to pay the difference, and in this case, they actually attempted to do so. They informed the bank, we realize our construction costs are a little high, and we're willing to pay the difference. It's enough for you guys to go there, isn't it? Because when the bank said to them, verify your assets for us, which is part of that 8B provision you're referring to, he wouldn't do it. Mr. Rude just said, I'm not doing it. I don't think I have to do it. First of all, the provision 8B does not relate to verification. It doesn't mention verification of assets. It says they can pay the difference, or the terms of the loan can be modified somehow. But there are other places where the bank is allowed to ask for an asset verification, right? Well, that's true. There's a construction loan agreement in which they're allowed to do so. And isn't the asset verification, the point of asset verification to say, as 8B does, pay the difference? In other words, I don't have to take your word for it that you're going to pay the difference. You've got to show me you can pay the difference. Isn't that the point? That is, I think, the argument they're making. But, again, I think that there is a question of whether or not the totality of the circumstances here and all the circumstantial evidence can create bad faith. What else is there? This is the only thing you mentioned. And even if there is not an express provision on asset verification, clearly this would come within the discretion of the bank to request, given all that preceded it. Going back to what Judge Jordan said about the loan-to-value ratio, one of the other issues that I think is suggestive of bad faith is the fact that they never brought any of these concerns to the Wu's attention at the time this was all going on. They simply said, without explanation, we want a $10 million appraisal or a verification of some arbitrary number of assets. But to be fair, counsel, he came in a year late with all the information. He came in too late. He didn't even give the name of the contractor until sometime in 2007. The construction was going to take 18 months, not a year. One, two, three, so many things that were not... And substantially over budget at that point. I understand all of that. With respect to the construction plan, again, the bank never mentioned anything about the costs or the delay. They simply took the plan and, in fact, they used it to obtain the appraisals. And there was a point later when the Wu's told the bank, if you're concerned about the construction costs, we'll reduce them. The bank said, no, we're not interested in proceeding with the project under any circumstances unless we can get this $10 million appraisal. And our position is that they picked the $10 million appraisal requirement even though it wasn't authorized in the agreements, specifically because they knew it was something the Wu's couldn't meet. And that's another piece of circumstantial evidence of their bad faith. Well, because they knew the... It seems to me Mr. Wu was pretty free with talking about, well, it's only a million dollars and, you know, we have five million and whatever. I mean, so I don't know how you can say they couldn't meet. Again, the banks weren't the only people that were feeling the effects of the credit crisis at that time. Again, that's just speculation. We may have been right, but that's sheer speculation. There's no evidence that supports that. I disagree with the assertion that there is no evidence of the bank's financial stress. I think there is quite a bit of evidence, in fact. The other side made a motion to exclude that evidence. That was never decided. Okay. If we can switch gears for a minute to the preemption arguments under the Fair Credit Reporting Act. Dave? The bank has made the argument to us that... The first argument is that you can't even contest what the district court did because you didn't put any argument in front of the district court, as you have in front of us, that the preemptive provisions the district court relied on aren't operative in this case. Would you respond to that, please? Sure. At the trial level, before the district court, the Wu's did make arguments about the Fair Credit Reporting Act. They made arguments that a particular section of that, which is 1681 H.E., was the applicable section. Yeah, but did you argue to the district court that 1681 B.T. No, T.B. 1681 T.B. Yeah. Is a little confusing. 1681 T.B. doesn't override or have an applicable effect here. Well, the other side argued that it does. Right. And in response, we argued, no, this other provision is the one that should apply. So, in other words, are they just wrong that you didn't make the argument to the district court that you're making to us? I would say yes. To the extent we didn't use the phrase, this other provision does not apply, it was certainly implicit from the argument we did make that... Well, I read, and I have it here, I have your argument, such as I saw it in the brief to the district court in summary judgment, quote, two lines, Plaintiffs claim the acts of defendants in reporting that plaintiffs were delinquent in fulfilling their obligations under the loan documents, despite the bank having first breached the loan documents, excusing any further compliance by the plaintiffs, was done falsely and maliciously and thus exempt from the provisions of the Fair Credit Reporting Act. At least the trier of fact is the proper party to determine whether the allegations are true. Nothing about a conflict in the case law, you didn't even use the word preemption. I understand, but I think under the existing standard, I think that's enough to put the trial court on notice of what the issues were. But you want us, you ask us to take this opportunity, and I'm quoting, to write on the complex issues involved. Well, I agree that... Very little, indeed from both sides, the district court had very little,  Just to add on that briefly, your reply brief says you implicitly made the argument. You just used that word again. I mean, aren't you acknowledging if you're saying it was implicit that the argument wasn't made? Well, the argument about preemption was certainly made. Their specific point was that we didn't make the sort of sub-argument that Section T does not apply. And I acknowledge that we did not ever say in our papers to the district court, Section T does not apply. However, we did argue that Section H does apply. So I think if you read together all the papers that were submitted to the district court, there's certainly enough there to say that the district court was presented with the issue, they ruled on it, and in this brief, I don't think there's any new concepts that were introduced to this court. It's simply an embellishment or a refurbishment of arguments that were made before. I don't think that's true. I mean, even your friends across the aisle, when they moved on summary judgment on preemption, one of the grounds, they presented a few district court cases, one Fourth Circuit case that is off point, and just a few district court cases, a couple from New Jersey and a couple unreported from other districts, period. There was no discussion. They alluded to the conflict, but there was no discussion. And again, the district court just did nothing on this, just said, concluded. I think you can agree with that. I also think it's inevitable that on appeal there's going to be some expansion of argument. So I think the test is really not going through the lines and making sure all the cases were cited to both courts. I think it's really about a fair opportunity to argue the issues. Well, I mean, all the cases, well, I recognize them. The Second Circuit and Seventh Circuit cases, these are right on. They were decided, I think, 2011 or whenever it was. But it could have been cited. Absolutely. You're absolutely correct. But again, my feeling is that when you're talking about an issue of forfeiture of argument, especially in a purely legal issue like this, you can't expect a complete, every possible avenue to be explored. And the real question is whether or not the district court had the issue presented to it. And I think certainly that happened here. All right. Well, thank you, counsel. We'll hear from you on rebuttal. And perhaps, counsel, why don't we start with preemption, since that's sort of fresh in our minds, if you wouldn't mind. That would be fine by me. Is there a waiver here? And we'll ask you, even if there wasn't, to perhaps deal with the merits of the preemption issue. Well, when Your Honor asks if there's a waiver, I'm assuming Your Honor is asking whether or not the plaintiffs have waived the issue. And I think the answer is yes. Judge Barry, you're exactly right. It was a sparse two paragraphs in their summary judgment opposition that made a veiled reference to our willful conduct. Two lines. Yes, really. The rest of it was conclusory. I mean, they didn't attempt to really reach the issue at all. But you cited, you heard my question to your friend, to Judge Hodgeberg, you cited some district court cases, really. Yes. I mean, regrettably, frankly, within four pages. Your presentation to her was four pages. Yes. Yes. Yes. I mean, regrettably, within this circuit, the district courts are all over the map on this issue. And even within the District of New Jersey, they're all over the map. Doesn't that argue for our taking this? It is a question of law, right? I mean, he's correct that whether it's preempted or not doesn't bear on the facts of this case at all. It's purely a question of law. And if the district courts are all over the map, shouldn't we take it up and fix it? Well, A, Your Honor, yes, it's a question of law. B, the district courts are all over the map. I'm not going to pardon the pun, waive my waiver argument by suggesting you should take it up. That's all right. It's noted. But why don't you go move to the merits now? Well, let me just ask one more question on this. Would you agree that if we affirm on the merits, there is no need for us to reach the preemption argument? Absolutely, Judge Barry. That was really an alternative argument we had posed in the district court. Should you reach the preemption argument, I would respectfully suggest you follow the Fourth, Second, and Seventh Circuits, which have all concluded, as we've briefed in this court, that when you've got a case such as this matter that's dealing with duties arising under 1681-2A and B, and that is what a furnisher tells the credit bureaus on the face of 1681-HE and 1681-TB1-F, it's not HE that applies. It's TB1-F, and that's a very straightforward preemption. You see, my difficulty here, and I think you should probably have picked it up, is that we're a reviewing court, and we really have nothing from what happened at the district court to review. So even though we could be helpful to district courts, we're starting here anew because we're not reviewing anything that would help decide these issues. I think I will pick up on what Judge Jordan mentioned a moment or two ago, and that is if you conclude there's no waiver, I don't know that there would necessarily be a point of reversing and asking the district court to conduct a legal analysis, because that's all it would be, a legal analysis that would then be reviewed de novo in a subsequent appeal. I would suggest in that situation that it makes sense for this court, in the first instance, to engage in that legal analysis. There really is no fact dispute impacting the preemption issue, because the only evidence below was that all the damages flowed from and related to our credit reporting. I'm going to ask you a question on that, because I don't know how that came to be here. You say, and before the district court, all of their claims are preempted, because they all emanate from false credit reporting. Well, I don't see that at all on alleged in the complaint as to the contract claims or the fraud claims. I don't see an allegation. I don't see the phrase credit reporting even mentioned, and you told the district court that, but I think of the district court, you just, well, and the court flew with that. That's a statement she made. All plaintiffs, $113 million damages emanate from the false credit reporting. I think she was wrong, and I wonder how you came to say that, because other than a plaintiff's expert, you tell us who said that, and I don't know what plaintiff's position is on this, but I can't believe he would agree that everything comes from the false credit reporting, and there's really no evidence of falsity here in any event. Well, I agree with you, Your Honor. There's a couple of things there. Number one, that goes back to whether a decision on the merits then controls this, because the credit reporting by definition couldn't be false unless the plaintiffs are right on the merits, and we are wrong, number one. Number two, the complaint, I forget which of your honors asked the question, but at summary judgment, what they allege in the complaints are relevant. Now, they did allege a credit slander claim in the complaint. That was count three. That was count three, yes, Your Honor. And at best, that would be preempted, I guess, right? Oh, clearly. I think there's no doubt about that, Your Honor. But what there also was in the record was both their expert report, which tied in the full damages and tied in the full damages to the credit reporting and Mr. Wu's own deposition testimony. Yes, but that doesn't point blank. It's not answered. I apologize, but I don't think you're getting it. The question that I understand, Judge Berry, is that I'm eager to hear the answer to. Sure, it may well be that the credit slander claim is preempted by the Fair Credit Reporting Act, but what does that have to do with the breach of contract claims? It doesn't seem to have, on its surface, it doesn't seem to have anything to do with those breach of contract claims and arguably not with the fraud claim either. So wasn't it just error for there to be a statement that it's all preempted because it doesn't seem like it's all preempted? No, Your Honor, simply because both the plaintiff in his deposition and the plaintiff's expert in his report said all the damages, breach of contract, fraud, are a result of error. Well, now you're trying to tell us the opposite of what you said a second ago, which is that whether there's preemption or not is going to be purely a question of law and not a question of fact. I mean, it occurs to me that whether there's preemption of the credit slander is purely a question of law. But now it starts to sound like you're saying maybe there's some fact questions kicking around here about how credit slander might actually override breach of contract claims and fraud claims. If that's true, that seems like unfriendly territory for you to be walking on to. Well, Your Honor, I think it's quite simple, and that is you take what the plaintiff put in evidence. What did the plaintiff put in evidence? His deposition testimony, his expert report. They say, not my words, not our words, their words. Even if he said those words, I'm curious why you would want to embrace them and then say to us, in effect, there's a fact reason now. Because it certainly can't be that it's a fact, that it's beyond all dispute whether or not the facts involve the credit report overriding a breach of contract claim. It just seems like you're inserting a fact issue. I'm kind of surprised. No, I really don't mean to, Your Honor. And let me try to answer the question. We raised, and the district court didn't deal with this in its opinion, we raised the argument that as a matter of causation they couldn't prove damages, that even if there was a breach of some contract here, this $113 million, the loss in some of Mr. Wu's businesses, properties losing their value, et cetera, had nothing to do as a matter of causation with the breach of contract. Okay, so let me make sure I understand. What you're saying is those breach of contract actions, they don't depend on, maybe I'm misunderstanding you, they don't depend on the credit reporting, do they? Well, ordinarily if a litigant chooses to bring a breach of contract claim, the litigant is the master of his claim. If he wants to predicate it on breach of contract, he can do that. If he doesn't want to, he doesn't have to do that. There's nothing in the complaint that predicates it on reporting. There's nothing that I can discern in the legal arguments that are made. And this is a legal position. The legal position you're taking is that the breaches of contract flow somehow from credit reporting and therefore preemptive. See, if you are so anxious on the preemption, if you – this all comes because there is this count three credit slander, and based on count three you come in and plaintiff's expert saying everything comes from the false credit reporting. This all has to – and therefore everything's preempted. Why don't we just put the word preemption out and go where you're strong? I mean, you weaken your strong claims with pressing all the damages emanate from the credit reporting when they clearly don't in my view. Well, Your Honor, we were moving for summary judgment. As a tactical matter, what we said to the district court was this is what they say. Accept what they say is true for this purpose only. And if you accept it as true, then it's preempted because what they're saying in their deposition testimony and their expert report is everything emanates from the credit reporting. We're simply saying you accept that as true, it's preempted. Now, I agree with you, Judge Barry. I think we've got very good arguments that there's just no causal relationship here assuming a breach of contract or even assuming a fraud. Regardless of whether the district court didn't reach those arguments, we know that all these arguments become summary judgment lines. The district court didn't even answer the credit slander count. It says simply a bold conclusion preempted because of the statute, period. So, I mean, I think before you spend any more, you ought to go to the merits. Oh, yes, I definitely want to. On the merits, the plaintiffs basically point to two things. Our concluding that the loan-to-value ratio was too high because the appraisals we received came in too low, and then our demanding an asset verification. Well, in the first instance, they point to the district court saying that your discretion was unbridled and the covenant of good faith and fair dealing has nothing to do with that. You don't seem to defend the district court's assertion in that regard, and perhaps with good reason. Do you acknowledge the accuracy of their argument that the district court just shank that? Well, I don't. I think you have to understand the context. So you think the covenant of good faith and fair dealing under New Jersey law does not have any impact on the discretion granted you in your contract documents? I don't, Judge Jordan, but I think you have to understand the context of the argument. They weren't arguing or alleging here that we should have demanded an asset verification of some number less than $3.8 million or that we should have been okay with the $9 million. You're going into the weeds on this, and I don't want you to do that because the district court's statement isn't a fact-specific one. It's a pretty clear statement of law that they have discretion over. That is a matter of law. The plaintiffs say that's just wrong. Are you saying it's right? Well, I'm saying it's right in this context. What they were trying to do was use that duty to write words out of the contract. I'm not getting an answer to my question. Please don't say it's right in this context because what I'm trying to get you to do is respond to what the district court said at this point. The district court said, as I understand the district court's statement, maybe I got it wrong, the district court said, Covenant of Good Faith and Fair Dealing doesn't have an application here because the bank's got discretion. That's a statement in New Jersey law. Is that an accurate statement or an inaccurate statement? It was an inartful statement, Judge Jordan. What the plaintiffs were trying to do was say we had nothing to do but a pure math calculation. That appraisal came in higher than the loan amount, end of story. That's okay. I understand you're not going to answer my question. That's fine. One thing you didn't seem to answer either is the argument they made. You said it was waived, but assume for the sake of discussion you're not going to say it's waived, that Section 8B can't mean what you say it means. It can't be the case that you're entitled to this $10 million appraisal here because that effectively writes Paragraph 8B out because by definition the loan-to-value ratio was always going to be below 60%. So it just can't mean what you say it means. And you said, well, they waived it, and isn't that an ironic argument? But you never seemed to address that argument on the merits. Can you take it on the merits? Well, sure. Are you writing it out? And I thought we did address it, Your Honor. All 8B did, and this contract can be read very simply. Section 7 and 7G, dealing with the appraisal, gives us the right to reject an appraisal in our sole discretion. If we choose not to reject it but the LTV is too high, then 8B kicks in, and that's how they get read together. So we could have said, well, we don't care that we don't have a $10 million appraisal. We're going to move forward, but under 8B, you've got to pay the difference. We could have done that, and we might have done that. That ties into why we wanted to know about the $3.8 million in assets, to see if they could come up with more money both because of the $1.2 million cost overrun and the low LTV. But we don't have to take their word on that. I realize we're out of time here, but if my colleagues want to talk to me. I understand your argument. I understood that from the briefing, but that doesn't seem to me to address the point they've got, which is perhaps you could have done that second route, but you didn't. What you did do was say, you've got to have a $10 million appraisal. We're entitled to demand that. If that's true, you have written 8B out of the contract. Isn't the fact, isn't just as a matter of practicality, isn't it the case that these covenants are written up before you know the loan values? So whether in this particular instance it turns out that the loan-to-value ratio was going to be under 60% because of the way it came out, that doesn't give any insight into what the covenants mean because the covenants are drafted and understood and the rights they give before the loan values are assessed. Am I wrong or right about the practicalities of the program? You're right, but they're mixing up the timeline. What happens here is the construction contract comes in after 540 days. It's $1.2 million over. Then the appraisals come in. The appraisals come in well under $10 million, and this is all on the record. The underwriter looks at the appraised value, concludes the LTV is too high, and then simply says, you need to now substantiate that you've got $3.8 million in assets. And at that point, the bank could have then decided what it was going to do. Would it allow the Wu's to pay the excess of the construction contract? Would it allow the loan to go forward even though the LTV is too high, but it wanted to know first about the $3.8 million? And the bank's right to demand that verification is all over the loan documents, so multiple places where that's permitted. And it's preposterous to say that that was an unreasonable thing when Mr. Wu submits a loan application saying he's got $27 million in assets and says in his deposition he could have easily substantiated the $3.8 million but doesn't do it. That's what happens here, Your Honor. May I ask one quick question? Of course. You moved to vacate the foreclosure in Chancery Court because Mrs. Wu had not been noticed, correct? What is the status of the foreclosure proceeding? Just to be clear, Judge Barry, I don't represent the bank in the foreclosure. I do know that happened. Mrs. Wu is, of course, a signatory to the mortgage because she's a co-owner of both properties. So even though she's not a borrower, under New Jersey law she has right to adequate notice of the foreclosure. Apparently there was some concern. I don't know whether it's accurate that there was inadequate notice. So as a result of that, the foreclosure was vacated, as you put it. And that's my understanding of where it stands. It's still vacated? There's nothing there? They haven't reinstituted foreclosure proceedings? My understanding is foreclosure proceedings have been reinstituted, Judge Jordan, but the properties haven't yet gone to sale. And both properties would be deemed under foreclosure? Yes, as expressly allowed by the cross-collateralization agreement. Just one last thing. Judge, the district judge in footnote one, I guess, suggested there might be some that that case may have something to do with our case. Is that so in terms of issue preclusion or otherwise? Partially, Your Honor. In foreclosures in New Jersey, like most states, the issues a foreclosure defendant can raise and the counterclaims that can be raised are constrained. They have to arise out of the foreclosure. The Wu's were not able to bring, as counterclaims in the foreclosure action, the precise claims they brought here. Therefore, we made the judgment that classic issue preclusion wouldn't work. If you're not allowed to bring a claim in an earlier action, you can't very well be bought into raising the subsequent action. I think she just noticed that. The duress point, though, I think is a valid point. That was rejected by both courts. Okay. Thank you very much. Thank you. You can just start. All right. If I may, I'd just like to add one thing with respect to the damages issue and the credit reporting. I think one of the issues that maybe counsel didn't explain well enough is that while he agrees that the credit reporting we argue is a consequence of the fraud or of the breach of contract, those claims do not depend on the credit reporting being false. In other words, even if, assuming that the credit reporting was not false, it was completely accurate, the damage to Mr. Wu's credit report, to his credit score, is still a consequence of the bank's fraud. So, in other words, you can pull the Fair Credit Reporting Act issues and the false credit reporting issues completely out of the case, and all you have at that point is a fraud claim and a breach of contract claim that allege that as a consequence the plaintiff's credit was damaged. So, to say otherwise would be to say that. The bottom line is you're saying the preemption arguments have nothing to do with the fraud and the breach of contract claims. Am I understanding that right? Absolutely. I think when the district court used the term predicated, she sort of misunderstood how that term was used by other cases. Those cases say. What did your expert say? Because I think that's what led everybody down the garden path. So, the expert report does not refer to, does not say that this is all the damages. The expert was a credit expert who issued a report on damages to the Wu's credit and valued that. It was not intended nor is it represented to be an exclusive representation of damages in the case. And, again. Well, it's been picked up by your friends across the aisle and by the district court, saying all of the damages are the result of the credit report. I disagree with that based on the plain language of the complaint. I agree with you on the complaint. Even if that were the case, even if that were the case, the claim is still not preempted because those damages are not necessarily. The credit slander is not preempted. No. Well, what I meant to say in that case is, assuming that you find the credit slander claim to be preempted under the Fair Credit Reporting Act. You still have breach of contract and fraud. You still have breach of contract and fraud because the credit reporting at issue didn't have to be false. It didn't have to be a violation of the Fair Credit Reporting Act. It could have just been a credit report that stemmed from a party's failure to satisfy the obligations of a contract that he was fraudulently induced to enter into. And that's precisely what we're alleging here. Thank you.  Thank you, counsel.